UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALEJANDRO MUNOZ-GONZALEZ, on behalf of himself, individually, and on behalf of all others similarly situated,

Plaintiff,

-against-

D.L.C. LIMOUSINE SERVICE, INC., and CHRIS THORNTON, individually, and MELISSA THORNTON, individually, and JOHN D'AGOSTINO, individually,

Defendants.

**Civil Action No:**
**15-CV-9368 (JPO)**

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE INAPPLICABILITY OF
THE TAXICAB EXEMPTION**

Jeffrey R. Maguire, Esq.
Alexander T. Coleman, Esq.
Michael J. Borrelli, Esq.

BORRELLI & ASSOCIATES, P.L.L.C.
655 Third Avenue, Suite 1821
New York, New York 10017
(212) 679-5000
(212) 679-5005
Attorneys for Plaintiffs

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT ......................................................................................... 1

SUMMARY OF MATERIAL FACTS............................................................................... 4

SUMMARY JUDGMENT STANDARD ........................................................................... 4

ARGUMENT ........................................................................................................................ 5

I.      DEFENDANTS OPERATE A LIMOUSINE COMPANY AND THEREFORE
CANNOT TAKE ADVANTAGE OF THE TAXICAB EXEMPTION.................5

      A.    The FLSA's Broad Remedial Purpose ............................................................ 5

      B.    The Department of Labor's Definition of a Business Operating Taxicabs
Specifically Excludes Limousine Services...................................................... 6

      C.    Defendants' Limousine Service Irrefutably Possesses the Very
Characteristics that Courts Routinely Find Render the Taxicab Exemption
Inapplicable. .................................................................................................. 9

            1.    Recurrent Contracts ............................................................................ 9

            2.    Prearranged Schedules and Fixed Routes ........................................ 13

            3.    Advertisement as a Limousine Service.............................................. 16

            4.    Fares are not competitive with Taxicabs ......................................... 18

II.     DEFENDANTS CANNOT APPLY THE TAXICAB EXEMPTION TO THE DLC
GROUND JOBS.................................................................................................... 19

      A.    The Exemption Does Not Apply While Defendants Operated as a Limousine
Service. .......................................................................................................... 19

      B.    Defendants are Completely Unable to Credibly Distinguish LSW from DLC
Ground .......................................................................................................... 20

CONCLUSION ................................................................................................................. 21

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                **Page(s)**

*A.H. Phillips, Inc. v. Walling*,
   324 U.S. 490  (1945) ........................................................................... 5

*Abel v. Southern Shuttle Servs., Inc.*,
   301 F. App'x 856 (11th Cir. 2008) ......................................... 6, 10, 14, 16

*Airlines Transp. v. Tobin*,
   198 F.2d 249  (4th Cir. 1952)............................................................ 8, 15

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ........................................................................... 4

*Antenor v. D & S Farms*,
   88 F.3d 925 (11th Cir. 1996) ............................................................... 5

*Arena v. Plandome Taxi Inc.*,
   2014 WL 1427907 (E.D.N.Y. Apr. 14, 2014)............................... *passim*

*Bilyou v. Dutchess Beer Distribs., Inc.*,
   300 F.3d 217 (2d Cir. 2002)................................................................ 5

*Cariani v. D.L.C. Limousine Service, Inc.*,
   363 F. Supp. 2d 637 (S.D.N.Y. 2005) ......................................... *passim*

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ........................................................................... 4

*Chao v. Gotham Registry, Inc.*,
   514 F.3d 280 (2d Cir. 2008)................................................................ 8

*Drug Mart Pharmacy Corp. v. Am. Home Prods. Corp.*,
   472 F. Supp. 2d 385 (E.D.N.Y. 2007)................................................. 4

*Farley v. Metro-N. Commuter R.R.*,
   865 F.2d 33 (2d Cir. 1989).................................................................. 6

*Havey v. Homebound Mortgage, Inc.*,
   547 F.3d 158 (2d Cir. 2008)................................................................ 5

*Herman v. Brewah Cab, Inc.*,
   992 F. Supp. 1054 (E.D. Wis 1998) .............................................. 13, 15

*Howard v. Port Auth. of N.Y., N.J.*,
   684 F. Supp. 2d 409 (S.D.N.Y. 2010) ................................................ 5

*In re Novartis Wage & Hour Litig.*,
    593 F. Supp. 2d 637 (S.D.N.Y. 2009) ........................................................................... 5

*June-Il Kim v. SUK Inc.*,
    2014 WL 842646 (S.D.N.Y. Mar. 4, 2014) ............................................. 6, 9, 10, 18

*Mascol v. E & L Transp., Inc.*,
    387 F. Supp. 2d 87 (E.D.N.Y. 2005) ............................................................................ 14

*McKinney v. Med. Grp. Transp. LLC*,
    988 F. Supp. 2d 993 (E.D. Wis. 2013) ..................................................... 6, 10, 16

*Morales v. Quintel Entm't, Inc.*,
    249 F.3d 115 (2d Cir. 2001) ......................................................................................... 5

*New Moon Shipping Co. v. MAN B & W Diesel AG*,
    121 F.3d 24 (2d Cir. 1997) .......................................................................................... 12

*Powell v. Carey Int'l Inc.*,
    490 F. Supp. 2d 1202 (S.D. Fla. 2006) .......................................................... *passim*

*Rivera v. Inc. Vill. of Farmingdale*,
    29 F. Supp. 3d 121 (E.D.N.Y. 2013) ....................................................................... 12

*Rossi v. Associated Limousine Servs., Inc.*,
    438 F. Supp. 2d 1354 (S.D. Fla. 2006) .......................................................... *passim*

*Scott v. City of New York*,
    592 F. Supp. 2d 386 (S.D.N.Y. 2008) ...................................................................... 8

*Seashock v. Harris Corp.*,
    1989 WL 36403 (E.D.Pa. April 11, 1989) .............................................................. 12

*Solis v. Kansas City Transp. Grp.*,
    2012 WL 3753736 (W.D. Mo. Aug. 28, 2012) .............................................. 19, 20

*Sussman v. Rabobank Int'l*,
    739 F. Supp. 2d 624, 627 (S.D.N.Y. 2010) ............................................................ 5

*Tennessee Coal, Iron & Ry. Co. v. Muscoda Local No. 123*,
    321 U.S. 590 (1944) ..................................................................................................... 6

*Torres v. Gristede's Operating Corp.*,
    628 F. Supp. 2d 447 (S.D.N.Y. 2008)..................................................................5

*Wirtz v. Cincinnati, Newport and Covington Transp. Co.*,
    375 F.2d 513 (6th Cir. 1967) ............................................................................. 15, 16

iii

**Statutes**

29 U.S.C. § 213(b)(17) .................................................................................................... 1, 6, 16

New York Labor Law § 651(5)(e)…………………………………………...………………………….7

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................................................ 1, 4

F.R.E. 801(d)(2)(A) …………………………………………………………………..12

F.R.E. 801(d)(2)(D) …………………………………………………………………..12

**Other Authorities**

*Restatement (Second) of Contracts* § 223 (1979) ........................................................ 12

## PRELIMINARY STATEMENT

Plaintiff, Alejandro Munoz-Gonzalez, and the twenty-three opt-in Plaintiffs (together as "Plaintiffs"), file this motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56(a), seeking an order that the taxicab exemption does not apply to the Plaintiffs.  All Plaintiffs are former employees of D.L.C. Limousine Service, Inc. ("DLC Limo"), its current and former owners, and Plaintiffs' former supervisor (all, collectively, as "Defendants").  Plaintiffs all allege that they worked for Defendants as limousine drivers in connection with Defendants' limousine service in excess of forty hours per week but that the Defendants failed to pay them statutorily-required overtime wages under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").

The Court should grant Plaintiffs' motion because there is no issue of fact that Defendants operate a limousine service, as its name clearly states, and therefore DLC Limo should not be entitled to the taxicab exemption, which was intended by legislature to cover only those in the business of operating taxicabs.  Indeed, 29 U.S.C. § 213(b)(17) (hereinafter referred to as the "taxicab exemption"), provides an exemption from overtime for "any driver employed by an employer engaged in the business of operating taxicabs."  In their tenth affirmative defense asserted in their Answer, Defendants claim that this exemption applies to defeat Plaintiffs' overtime claims under the FLSA and NYLL.  But Defendants cannot meet the requirements of this exemption, and the Court should strike this defense, because Defendants' business practices fall outside of the Department of Labor's specific definition of a "business of operating taxicabs" as detailed in its Field of Operations Handbook (1999 ed.) ("FOH").  This is especially significant because courts have consistently relied upon the FOH definition in analyzing whether businesses are exempt under the taxicab exemption.  Moreover, the FOH also contains specific examples of non-exempt work that are not intended to come under the purview of the taxicab

1

exemption, and one such example is "airport limousine services."  Consequently, under the guidance of the Department of Labor's FOH, in conjunction with the FLSA's broad remedial intent requiring exemptions to be construed narrowly against the employer, the taxicab exemption is obviously inapplicable as a matter of law based on the undisputed facts in the record.

Furthermore, as detailed below, it is irrefutable that Defendants' very practice is comprised of the attributes that distinguish itself from a business operating taxicabs as established by the applicable case law.  Unquestionably, the uncontroverted facts show that Defendants: established recurrent contracts with repeat customers; prearranged all passenger trips and required its customers to pre-pay both fares and gratuities; prohibited drivers from cruising for passengers or picking up passengers "hailing" taxis; advertised substantially on behalf of DLC Limo's limousine services intentionally making efforts to grow its corporate-side business; and set its fares to be competitive with recognized limousine services, not taxicab services.  These factors completely disqualify Defendants from the taxicab exemption.

Plaintiffs anticipate that in opposition, Defendants will rely heavily on one district court case involving their company, *Cariani v. D.L.C. Limousine Service, Inc.*, 363 F. Supp. 2d 637 (S.D.N.Y. 2005), in which the Honorable Colleen McMahon found that the taxicab exemption applied to DLC Limo.  Yet, following that decision, which was issued over a decade ago, under the Defendants' newly hired Chief Executive Officer, Defendant Melissa Thornton, DLC Limo concentrated on implementing the very attributes that the *Cariani* court found to be absent when the business operated almost exclusively out of a taxi stand at the Westchester Airport -- the lack of which almost wholly shaped Judge McMahon's analysis in 2005.  As described below, the facts have materially changed.

Additionally, and critically relevant for the purposes of the instant motion, the *Cariani* decision did not once mention DLC Limo's self-promoted limousine service entity, LSW Chauffeured Transportation ("LSW").   This is either because the *Cariani* case was decided substantially pre-discovery on a motion to dismiss, or alternatively, that this clear-cut limousine entity was established post-*Cariani*.   At present date, it is undisputed fact that Defendants operate two entities under DLC Limo: (1) LSW, the entity that functions entirely as a limousine service, and (2) DLC Ground Transportation ("DLC Ground"), the entity that mostly performs jobs out of its airport "taxi" stand based on DLC Limo's longstanding contract with the Westchester County Airport.   Regardless, it is impossible to rely exclusively upon the analysis applied in *Cariani*, especially considering the "paucity of case law addressing the taxicab exemption" at that time. *Cariani*, 363 F. Supp. 2d at 642.   Since that decision, as will be made apparent in this brief, many courts have addressed the issue, supporting Plaintiffs' position that an airport limousine company with the very attributes that DLC Limo possesses cannot take advantage of the taxicab exemption.

Lastly, Defendants cannot fall back on the argument that, at the very least, only their drivers' hours conceded as driving for their admitted limousine service, LSW, should be considered non-exempt.   Indeed, this very argument was addressed in a similar limousine service context, and as will be explained in more detail below, it was found to be clearly erroneous.   As the record makes evident, DLC Limo regularly interchanges its drivers, its cars, and always provides basically the same service for its LSW jobs and its DLC Ground jobs.   The record further shows that Defendants themselves cannot meaningfully distinguish between the two arms of their business.   For this reason, it becomes plainly clear that Defendants' limousine service is just as its names states, a limousine service, and not a business operating taxicabs.

Thus, consistent with Congressional intent, the Department of Labor's guidance, and the relevant case law, the Court should construe the exemption narrowly against the employer, and grant Plaintiffs' motion for partial summary judgment on the inapplicability of the taxicab exemption and strike that defense from this case.

## SUMMARY OF MATERIAL FACTS[1]

For a recitation of all facts relevant to this motion, Plaintiffs respectfully refer the Court to their amended statement of undisputed facts submitted herewith.

## SUMMARY JUDGMENT STANDARD

A party may move for summary judgment as to any claim or defense, or part of any claim or defense, upon a showing that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "One of the principle purposes of summary judgment is to isolate and dispose of factually unsupported claims *or defenses*." *Drug Mart Pharmacy Corp. v. Am. Home Prods. Corp.*, 472 F. Supp. 2d 385, 393 (E.D.N.Y. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)) (emphasis added).

Summary judgment is appropriate where the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-49 (1986). Thus a party opposing a motion for summary judgment can only defeat the motion by setting forth "specific facts showing that there is a genuine issue for trial." *Id*. at

---

[1] Plaintiffs direct the Court to the Plaintiffs' Local Rule 56.1 Statement for a recitation of the relevant material and undisputed facts (hereinafter "56.1"). All references to "Ex." in this Memorandum of Law refer to the exhibits found in the November 1, 2016 Declaration of Jeffrey R. Maguire submitted in support of this motion.

248 (citation and quotation omitted).  The ultimate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

"The same standard applies where the parties file cross-motions for summary judgment, and each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Sussman v. Rabobank Int'l*, 739 F. Supp. 2d 624, 627 (S.D.N.Y. 2010) (citing *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)).

## ARGUMENT

## I.   DEFENDANTS OPERATE A LIMOUSINE COMPANY AND THEREFORE CANNOT TAKE ADVANTAGE OF THE TAXICAB EXEMPTION.

### A.   The FLSA's Broad Remedial Purpose.

The remedial nature of the FLSA's overtime provisions require that "exemptions should be 'narrowly construed against the employers seeking to assert them.'" *In re Novartis Wage & Hour Litig.*, 593 F. Supp. 2d 637, 643 (S.D.N.Y. 2009) (quoting *Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 222 (2d Cir. 2002)); *accord Antenor v. D & S Farms*, 88 F.3d 925, 933 (11th Cir. 1996) (citing *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)) (noting that "because the FLSA [is] a remedial statute[ ], we must construe [it] broadly.").  Importantly, "the burden rests on the employer to prove that a particular employee is exempt from the Act's requirements." *Howard v. Port Auth. of N.Y., N.J.*, 684 F. Supp. 2d 409, 412 (S.D.N.Y. 2010) (citing *Havey v. Homebound Mortgage, Inc.*, 547 F.3d 158, 163 (2d Cir. 2008)).[2]

---

[2] New York's overtime provisions expressly incorporate the FLSA exemptions. *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 455 n.4 (S.D.N.Y. 2008) (citing 12 N.Y.C.R.R. § 142–2.2).

The Supreme Court has emphasized the significance of the requirement to interpret the FLSA broadly, in light of its remedial nature:

> [The FLSA is] remedial and humanitarian in purpose. We are not here dealing with mere chattels or articles of trade but with the rights of those who toil . . . Those are rights that Congress has specifically legislated to protect. Such a statute must not be interpreted or applied in a narrow, grudging manner.

*Tennessee Coal, Iron & Ry. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944); *see also Farley v. Metro-N. Commuter R.R.*, 865 F.2d 33, 35 (2d Cir. 1989) ("[t]o extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretive process.").

### B.     The Department of Labor's Definition of a Business Operating Taxicabs Specifically Excludes Limousine Services.

At the heart of this matter is 29 U.S.C. § 213(b)(17), which provides an exemption to the FLSA's overtime requirements to "any driver employed by an employer engaged in the business of operating taxicabs." Consistently, courts have relied upon Chapter 24h of the Department of Labor FOH to determine the applicability of the taxicab exemption. *Arena v. Plandome Taxi Inc.*, 2014 WL 1427907, at *8 (E.D.N.Y. Apr. 14, 2014); *June-Il Kim v. SUK Inc.*, 2014 WL 842646, at *4 (S.D.N.Y. Mar. 4, 2014); *Cariani v. D.L.C. Limousine Service, Inc.*, 363 F. Supp. 2d 637, 641 (S.D.N.Y. 2005); *Abel v. Southern Shuttle Servs., Inc.*, 301 F. App'x 856, 859 (11th Cir. 2008); *McKinney v. Med. Grp. Transp. LLC*, 988 F. Supp. 2d 993, 1000 (E.D. Wis. 2013); *Rossi v. Associated Limousine Servs., Inc.*, 438 F. Supp. 2d 1354, 1363 (S.D. Fla. 2006). The provision states:

> 24h01 "*Business of operating taxicabs.*" The taxicab business consists normally of common carrier transportation in small motor vehicles of persons and such property as they may carry with them to any requested destination in the community. The business operates without fixed routes or contracts for recurrent transportation.  It serves the miscellaneous and predominantly local transportation need of the community.  It may include such occasional and unscheduled trips to or from transportation terminals as the individual passengers may request, and may include stands at the transportation terminals as well as at other places where numerous demands for taxicab transportation may be expected.

FOH 24h01.[3] [4]  Significantly, the FOH also includes a section providing "[e]xamples of non-exempt work" FOH 24h03.  Specifically, FOH 2403(a)(4) gives the following example of non-exempt work:

> Performing work, including driving in connection with other business operations of the employer (i.e. not his taxicab operations), **such as operation of an airport limousine service** (see FOH 24c04), a pick-up and delivery service, or a moving and storage service.

---

[3] For the Court's convenience, the relevant portions of the Department of Labor's Field of Operations Handbook are attached to the Maguire Declaration as **Ex. 10.**

[4] NYLL § 651(5)(e) provides a similar exemption from overtime by excluding from the definition of "employees" any individual who is employed or permitted to work as a driver engaged in operating a taxicab.  Additionally, New York Codes, Rules, and Regulations ("N.Y.C.R.R.") § 142-2.14(c)(6) defines the term "a driver engaged in operating a taxicab" as follows:

> The term driver engaged in operating a taxicab means an individual employed to drive an automobile equipped to carry no more than seven passengers, which is used in the business of carrying or transporting passengers for hire on a zone or meter fare basis, and the use of which is generally limited to a community's local transportation needs and which is not operated over fixed routes, or between fixed terminals, or under contract.

Because this definition is substantially similar to the DOL's definition, and due to the previously-stated provision that the NYLL expressly incorporates the FLSA's exemptions pursuant to 12 N.Y.C.R.R. § 142–2.2, it is Plaintiffs' position that a separate analysis under the NYLL is unnecessary, as it is all but certain to lead to the same result. *See Arena*, 2014 WL 1427907, at *17.

FOH 24h03(a)(4) (emphasis added).   The internal cross-reference to FOH 24c04 references limousine drivers in general, lending additional support for the Department of Labor's manifest intent to distinguish limousine drivers from taxicab drivers. *See* FOH 24c04.   Thus, to place weight in FOH 24h01, a reviewing court must place equal weight in the example unambiguously stated in FOH 24h03(a)(4).   Unquestionably, taking these two provisions in conjunction, it is logically impossible to come to the result that the company in this matter is not an airport limousine service, and therefore is not entitled to the taxicab exemption with respect to its employees.   Crucially, based on this very principle, the court in *Rossi*, in concluding that the taxicab exemption did not apply to an airport limousine company, stated the following:

> In so concluding, the Court remains respectful of the *Cariani* decision and its reliance on §24h of the [FOH], but finds that principles of statutory construction prohibit this court from following that decision under the circumstances of this case.

438 F. Supp. 2d at 1364, 1364 n.5 (noting that "the Handbook itself provides that driving in connection with the operation of an airport limousine service is an example of work which is non-exempt under the taxicab exemption," citing FOH 24h03).

Further, following the well-established rubric that all exemptions of the FLSA must be construed narrowly against the employer removes any doubt that Defendants cannot take advantage of it here.   To do so would be incongruous to the remedial nature of the FLSA, and its intentions to ensure "a fair day's pay for a fair day's work." *Scott v. City of New York*, 592 F. Supp. 2d 386, 399 (S.D.N.Y. 2008) (citing *Chao v. Gotham Registry, Inc.,* 514 F.3d 280, 283 (2d Cir. 2008)).   Critically, the Fourth Circuit has expressly applied this construction to the taxicab exemption. *Airlines Transp., Inc. v. Tobin*, 198 F.2d 249, 252–53 (4th Cir. 1952) ("the provisions of [the taxicab exemption] exempting employees engaged in the business of operating taxicabs

must be narrowly construed to those plainly and unmistakably within its terms, for otherwise the will of Congress will be frustrated.").

### C. Defendants' Limousine Service Irrefutably Possesses the Very Characteristics that Courts Routinely Find Render the Taxicab Exemption Inapplicable.

As the Honorable Andrew Carter, Jr. stated in a recent decision denying the defendant summary judgment on the taxicab exemption, "[f]ocusing almost entirely on the DOL definition to resolve inconsistent outcomes in limited case law, *Cariani* found that the defendant taxi and limousine service fit within the taxicab exemption because: (1) its drivers did not cover fixed routes or adhere to fixed schedules; (2) it offered door-to-door service with the time of the trip and the destination determined by the customer; (3) it was not under contract with any airline or other company; and (4) its fares were equivalent to the fares of taxi companies." *June-Il Kim*, 2014 WL 842646, at *4.   Indeed, as explained above, courts have routinely found those particular attributes to be vital in determining whether the taxicab exemption applies.

In the present matter, it is undisputed fact that DLC Limo possesses the following attributes, each of which strongly weigh against application of the taxicab exemption:

- Recurrent contracts and with corporate entities and repeat customers;

- Prearranged driver schedules without driver discretion;

- Advertisement as a limousine business; and

- Fares designed to be competitive with recognized limousine companies.

An examination of these key factors proves to be dispositive.

### 1. Recurrent Contracts

According to the FOH, a business of operating taxicabs "operates without fixed routes or contracts for recurrent transportation." FOH 24h01.   In determining the applicability of the

9

taxicab exemption, courts have thus inquired into whether the defendant company is a party to recurrent contracts to provide transportation services, and the significance of the existence of such contracts cannot be overstated. *See e.g., Arena*, 2014 WL 1427907, at *11 (citing *Powell v. Carey Int'l Inc.*, 490 F. Supp. 2d 1202, 1213 (S.D. Fla. 2006)) (finding taxicab exemption applied where defendant did not possess recurrent contracts for transportation and specifically distinguishing this fact from case cited by plaintiffs where recurrent contracts existed).   Indeed, courts have routinely found that the taxicab exemption does apply, on the one hand, when the business is **<u>not</u>** a party to recurrent contracts, s*ee Arena*, 2014 WL 1427907, at *15; *Cariani*, 363 F. Supp. 2d at 642, 645, but does not apply, on the other, when recurrent contracts exist. *See June-Il Kim*, 2014 WL 842646, at *5 (finding that the taxicab exemption did not apply where the business "maintains contracts with repeat customers"); *McKinney*, 988 F. Supp. 2d at 1002 (finding it "critical that the Department of Labor excluded businesses operating with contracts for recurrent transportation," and denying the taxicab exemption) (internal quotations omitted); *Powell*, 490 F. Supp. 2d at 1213 (finding defendants failed to meet burden of establishing the taxicab exemption where defendants "have contract arrangements with local hotels, corporate clients, and destination management companies.").   Moreover, some courts have found that limousine companies are non-exempt even without recurrent contracts. *See Rossi*, 438 F. Supp. 2d at 1363; *Abel*, 301 Fed. Appx. at 859. *But see Arena*, 2014 WL 1427907, at *15 (finding the taxicab exemption applicable while specifically highlighting the lack of recurrent contracts); *Cariani*, 363 F. Supp. 2d at 642 (same).   And Plaintiffs' search of the relevant case law has revealed that no courts have found limousine companies to be taxicab exempt *with* recurrent contracts established with corporate clients.

In the present case, it is undisputed fact that Defendants entered into many recurrent contracts with repeat customers that clearly comprised a significant portion of DLC Limo's business. 56.1 ¶¶ 27-28, 33; Ex. 13.   Identical to the facts in *Powell* that disqualified that limousine company from the taxicab exemption, there is no factual dispute between the parties here that following the decision in *Cariani*, DLC Limo maintained contractual arrangements with both a local hotel to provide exclusive chauffeur service and with corporate clients. *Compare* 56.1 ¶¶ 36-37; Ex. 5 ("DLC Limo entered into written contracts with Doral Arrowwood in approximately July 2012 and PepsiCo in 2013," and "[t]he terms of DLC Limo's contract with Doral Arrowwood provided that DLC Limo maintained a desk in the hotel lobby in order to provide exclusive chauffeur transportation service for the Doral Arrowwood Hotel Conference Center") *with Powell*, 490 F. Supp. 2d at 1213 (finding the taxicab exemption inapplicable while noting that although the defendant limousine company does not cover fixed routes or adhere to fixed schedules, it does have contracts with local hotels, corporate clients, and management companies).   DLC Limo also contracted with private hangars, such as NetJets and Million Air, providing recurrent transportation to the passengers of these airlines. 56.1 ¶¶ 39, 47.

The true nature of Defendants' business is further exposed by looking into their billing and account system.   Defendants admit that nearly every DLC Limo customer set up an account with Defendants in order to receive transportation. 56.1 ¶¶ 27-28, 32, 40, 42, 45-46.   These accounts allowed Defendants to charge customers both fare and tip *before* the service was provided. 56.1 ¶¶ 29, 32.   As a result, many businesses would set up an account, prearrange a service, and Defendants charged them a rate based upon past services. 56.1 ¶¶ 27-28, 30; Ex. 13. Companies that did not have a credit card on file were sent an invoice. 56.1 ¶ 31.   Customers were not expected to pay at the time of service. 56.1 ¶ 32.   Most importantly, DLC Limo would

routinely establish a course of dealing with its repeat customers, agreeing to honor special rates, or individualized service. 56.1 ¶¶ 36-47; Ex. 13.  Thus, this prior course of dealing inarguably established an awareness of and consent to intended contractual terms. *See New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 31 (2d Cir. 1997) (citing *Restatement (Second) of Contracts* § 223 (1979)) (noting that "[e]vidence of a prior course of dealing may establish a party's awareness of and consent to intended contractual terms.").

Significantly, Ms. Thornton provides this undisputed information in an October 9, 2012 article with the Examiner News. 56.1 ¶¶ 68-69; Ex. 7.  According to the article, which is obviously admissible for its truth as a statement made by a party opponent pursuant to Federal Rule of Evidence 801(d)(2)(A) in her representative capacity and pursuant to Federal Rule of Evidence 801(d)(2)(D) in her capacity as an agent, *see Rivera v. Inc. Vill. of Farmingdale*, 29 F. Supp. 3d 121, 130 (E.D.N.Y. 2013) (citing *Seashock v. Harris Corp.,* 1989 WL 36403, at *1–2 (E.D.Pa. April 11, 1989) (admitting as evidence a "1957 article" under F.R.E. 801(d)(2)(D), as the author was a "manager of [the defendant company], at the time he authored the article"), Ms. Thornton explains the importance of offering a "stream-lined service to clients" made possible by "develop[ing] relationships with over 550 affiliates around the world." 56.1 ¶¶ 68-69; Ex. 7. Ms. Thornton also provides information about the company's database containing their "clients' preferred services," explaining that the company's own services "are very customized." *Id*.  The article also promotes Defendants' "exclusive contract for providing the Rye Brook-based Doral Arrowwood Hotel Conference Center with chauffeured transportation service," and additionally their business relationship with Pfizer. *Id*.

Although DLC Limo unmistakably provided service to passengers that came to their "taxi" stand at the Westchester Airport, it is not disputed that DLC Limo intentionally

established services for repeat customers that provided discount rates and special terms. 56.1 ¶ 38.  Indeed, their arrangement with private hangers Net Jets and Million Air was designed for passengers to avoid the taxi stand. 56.1 ¶¶ 39, 47.  In both situations, passengers had to pre-pay both their fares **and** their tips, and DLC Limo obligated its customers to set up account information to do so, a practice unheard of in the taxi industry. 56.1 ¶¶ 27-30, 32.

Moreover, Defendants admit that they purposefully sought business of repeat customers to grow their business. 56.1 ¶¶ 33, 50-51, 64.  They even provided free trips to encourage future dealings. 56.1 ¶¶ 48-49.  Further, Defendants hired sales professionals to grow their client-side business, a practice only a limousine transportation company would engage in. 56.1 ¶¶ 50-51.

Extremely relevant for the purpose of this motion, these facts are entirely absent from the *Cariani* case.  To the contrary, Judge McMahon explicitly noted that there did **not** exist any recurrent contracts in that matter, and the business instead consisted mainly of seven sedans that would line up at the Westchester Airport taxi stand to deliver passengers that would approach the stand. *Cariani*, 363 F. Supp. 2d at 639  Conspicuously, the business has changed since that time, and furthermore, it was Melissa Thornton's obvious intention to grow the business, especially the limousine service, which certainly did not exist during the *Cariani* case.[5]

2.      *Prearranged Schedules and Fixed Routes*

Another attribute commonly recognized as distinct from taxicab services is the requirement of drivers "to adhere to a daily work schedule which is prearranged by defendants and/or dispatcher, not the individual drivers." *Herman v. Brewah Cab, Inc.*, 992 F. Supp. 1054, 1060 (E.D. Wis 1998) (finding that the taxicab exemption did not apply when "[u]nlike the defendants' transportation service, taxicab companies do allow their drivers to pick up

---

[5] Moreover, the *Cariani* case was mainly decided pre-discovery and not on a fully-developed record from which this Court will benefit in this matter.

passengers at their discretion . . . and do not operate on prearranged schedules"); *accord Cariani*, 363 F. Supp. 2d at 644 (opining that the fact that the company's "drivers do not organize their own time or cruise for passengers" served to "augur against [finding that the taxicab exemption applied]"); *Rossi*, 438 F. Supp. at 1363 (noting the significance in the distinction that defendant's drivers do not cruise for customers and cannot be hailed down by customers, but "[r]ather, the transportation must be prearranged"); *Mascol v. E & L Transp., Inc.*, 387 F. Supp. 2d 87, 97-98 (E.D.N.Y. 2005) (holding that "[f]or the reasons articulated in *Brewah* and the DOL opinion" the taxicab exemption did not apply to ambulette drivers specifically placing "significant weight" on the prearranged schedules); *Abel*, 301 F. App'x at 860 (taxicab exemption did not exist where shuttle service "begins each trip with a route of scheduled stops that are predetermined by the dispatch office").

Additionally, unlike the common sense idea of a taxicab, which operates without fixed routes, the Eleventh Circuit has observed that a distinction exists for transportation services where generally "one end of the route is always fixed." *Abel*, 301 F. App'x at 860. The court in *Abel* reasoned that taxicabs may operate out of terminals to either pick up or drop off customers, but this is far different from a transportation service where "one of the two points for the [driver] is **always**" an airport. *Id*. at 860 (emphasis added).

Here, the parties agree that DLC Limo's drivers are always under the obligation of operating on prearranged schedules that are controlled by the dispatcher. 56.1 ¶¶ 19, 21. Unlike the common conception of a taxicab, there is no dispute that DLC Limo's drivers were prohibited from cruising for passengers, accepting street hails, or picking up passengers on the side of the road at the drivers' discretion. 56.1 ¶¶ 22-23. Indeed, it is undisputed that DLC

Limo's drivers are never permitted to pick up passengers or make any trips without the direction of the dispatcher. 56.1 ¶ 24.

Again, this is a fact that is distinguishable from the *Cariani* case, where the court reasoned that because "D.L.C.'s drivers do not cover fixed routes or adhere to fixed schedules" this would "suggest that defendant should fit within the taxicab exemption." *Cariani*, 363 F. Supp. 2d at 644.   While it may or may not be true that DLC Limo once relied solely on passengers that came to their Westchester Airport taxi stand, the facts in the present case show that this practice has either has changed, or that discovery in the *Cariani* case might have exposed this fact.   Regardless, Defendants cannot deny, nor can the Court ignore that following the *Cariani* case, DLC Limo made successful efforts to grow its limousine business and provided services never discussed in *Cariani*. 56.1 ¶¶ 63-73.   Courts have consistently found these prearranged airport limousine services to be non-exempt. *Airlines Transp., Inc.*, 198 F.2d at 251 (holding that the taxicab exemption did not apply to an airport limousine company transporting passengers to and from the airport on fixed or limited routes on a definite schedule); *Rossi*, 438 F. Supp. 2d at 1364, 1364 n.5; *Powell*, 490 F. Supp. 2d at 1210, 1212; *Herman*, 992 F. Supp. at 1059; *Wirtz v. Cincinnati, Newport and Covington Transp. Co.*, 375 F.2d 513 (6th Cir. 1967) (holding that the taxicab exemption inapplicable to limousine service where "all trips must either originate or terminate at the airport" and "stand and wait for passengers only at the airport.").

This is entirely distinguishable from *Arena*, which held that the taxicab exemption applied to a company that designated itself as just that, Plandome Taxi Inc.   In concluding that the defendant was in the business of operating taxicabs, the court stated that "Plandome's business operated in the local Town of North Hempstead area" that "had taxi stands at a local railroad station and on a local road." *Arena*, 2014 WL 1427907, at *15.   Thus, Plandome's

15

business plainly and undisputedly operated far differently that Defendants' airport limousine service here,[6] as well as the businesses in the host of other previously mentioned cases that denied the taxicab exemption to airport limousine services.

### 3.    Advertisement as a Limousine Service

In *Rossi*, the court found that under the plain meaning of 29 U.S.C. § 213(b)(17), the defendant, Associated Limousine Services, "as its name clearly states, is in the business of operating limousines, not taxicabs." 438 F. Supp. 2d at 1363.  The court observed the importance of the "undisputed" facts that the defendant "advertises itself as a limousine company." *Id.*; *accord Wirtz*, 375 F.2d at 513 (finding that taxicab exemption did not apply to company that operated vehicles that were not metered and were not advertised as taxicabs); *Abel*, 301 Fed. Appx. at 308 (company that advertised under "Airport Transportation" but not under "Taxicabs" did not fall under taxicab exemption); *Powell*, 490 F. Supp. 2d at 1213 (taxicab exemption did not apply to limousine company that advertises itself as a chauffeur service); *McKinney*, 988 F. Supp. 2d at 1002 (finding no taxicab exemption noting that the fact that defendant did not advertise itself as a taxi company weighed against the exemption applying).

The court in *Cariani* found that the fact that the company "does not advertise itself as a taxi company" weighed against finding that the taxicab exemption applied.  Further, in *Cariani*, the court noted that the "[d]efendant's exhibits do not include any of its advertisements." 363 F. Supp. 2d at 640.  Additionally, the court conducted its own research into the public phonebook and found that "D.L.C. is adverstised under 'Airport Transportation,' but not under 'Limousine Service' or 'Taxicab.'" *Id.* (quoting the Verizon Yellow Pages for Westchester County).

---

[6] Unlike the business in *Arena*, Defendants' business here can hardly be described as "local," as it is undisputed that their limousine services included out-of-state trips as far as 250 miles, such as to the state of New Hampshire. 56.1 ¶ 25.

Once again, the undisputed record before this Court is markedly different. DLC Limo advertises as Limousine Service Worldwide Chauffeured Transportation on its own website that unmistakably strives to separate itself from a "business of operating taxicabs" and advertises numerous specialized services catering to clients in search of "luxury ground transportation."[7] 56.1 ¶¶ 63-66; Ex. 6. The company's website also proudly promotes itself as a "full-service, customized ground transportation" service with a "personal touch and at a level unmatched by the competition." 56.1 ¶ 65; Ex. 6. The company provides further boasts of its expansion over the years, proudly explaining its growth from the seven car fleet discussed in *Cariani*, 363 F. Supp. 2d at 639, to a "world-class transportation service[] both locally and internationally through a network of more than 450 affiliate providers in more than 550 cities around the globe." 56.1 ¶ 66; Ex. 6. Indubitably, this is not the same company that the court in *Cariani* held to be subject to the taxicab exemption. *Id*. at 642, 642 n.5 (describing the business to be "predominately local," relying on the Secretary of Transportation's definition of local, "which involves trips of no more than 70 miles."). To the contrary, the parties agree that DLC Limo now provides trips to Connecticut, New Jersey, Massachusetts, and New Hampshire, which is an approximately 250 mile trip.

The record makes apparent Thornton's efforts to promote the company's chauffeured transportation service since she joined the company in 2008. In the October 9, 2012 Examiner News article, Thornton describes her accomplishments of "growing the upscale boutique limousine service offered by LSW Chauffeured Transportation, which works with executive-level companies throughout the area." 56.1 ¶ 69; Ex. 7. Additionally, in a listing on Manta, DLC

---

[7] Defendants' individualized website for its LSW services is located at www.lswlimo.com. 56.1 ¶ 69.

Limo is advertised as a limousine service, making absolutely no mention as a taxicab service. 56.1 ¶ 67; Ex. 11.[8]

Surely, Defendants' efforts to either create or grow the LSW side of the business and exclusively advertise their limousine services sets the company apart from DLC Limo's former operations as discussed in *Cariani*, and in line with the multitude of cases finding the taxicab exemption inapplicable.

### 4.      *Fares are not competitive with Taxicabs*

Additionally, multiple courts have noted that the *Cariani* court placed substantial weight on the FOH in finding that the taxicab exemption applied because its "fares were equivalent to the fares of taxi companies." *See June-Il Kim*, 2014 WL 842646, at *4; *Powell*, 490 F. Supp. 2d at 1212; *Rossi*, 438 F. Supp. 2d at 1363; *Arena*, 2014 WL 1427907, at *9.  Moreover, in *Cariani*, the court noted that the defendant's fares were "less than the rates charge[d] by recognized limousine services like MTC Limousine and Corporate Coach, Inc., and Red Oak Transporation." *Cariani*, 363 F. Supp. 2d at 644.

Since the decision in *Cariani*, DLC Limo provides limousine services through LSW that are competitive with rates charged by other recognized limousine services. 56.1 ¶ 18. Defendants freely concede that DLC Limo charges more for LSW jobs than DLC Ground jobs. 56.1 ¶¶ 15, 17.  Defendants admit their intent to grow the LSW-side of the business, because naturally, higher fares equals more revenue. 56.1 ¶ 52.  Furthermore, Defendants require LSW customers to pre-pay gratuities to customers in the amount of twenty percent of the fare, as opposed to the fifteen percent that they charge DLC Ground customers. 56.1 ¶¶ 14, 29.

---

[8] Manta.com is an online small business service directory and search engine which provides small businesses with networking information. www.wikipedia.org/wiki/Manta_(web_site).

Additionally, Defendants admit that the "recognized limousine service," MTC Limousine, is the same company that DLC Limo now works with as an affiliate provider. 56.1 ¶¶ 56-57.   DLC Limo and MTC often provide runs for the other company, making it palpably impossible to argue that a recognized limousine company can also be treated as a business of operating taxicabs. 56.1 ¶ 56.

Thus, weighing all the factors, it is abundantly clear that DLC Limo operates a limousine service incompatible with the FOH definition for businesses operating taxicabs and as recognized by judicial precedent.

## II.   DEFENDANTS CANNOT APPLY THE TAXICAB EXEMPTION TO THE DLC GROUND JOBS.

### A.   The Exemption Does Not Apply While Defendants Operated as a Limousine Service.

In *Solis v. Kansas City Transp. Grp.*, 2012 WL 3753736, at *11 (W.D. Mo. Aug. 28, 2012), the court denied the taxicab exemption to a taxicab company during the time that its drivers were functioning under set contracts between the company and two third party entities. While the court found that the defendant was "clearly a taxicab company," it nonetheless declined to extend the taxicab exemption to the period of time "when drivers were driving for [the two contracted third party entities]" because during this period, "[d]efendant was not engaging in the business of operating taxicabs." *Id.*   The basis of the court's decision was that during this period, *inter alia*, "the fare was set by contract between [d]efendant and [the two contracted third party entities]." *Id.*   The court concluded that "the taxicab exemption was not applicable to [d]efendant while employing drivers under the [third party] contracts" because during this time period the drivers were not "functioning as taxicabs as that term is commonly understood." *Id.*

Here, it is again undisputed fact that Defendants operate two separate entities, DLC Ground and LSW, under one company. 56.1 ¶ 1.  Although Defendants indiscriminately failed to pay all drivers overtime wages despite acknowledging that the drivers worked over forty hours on a weekly basis, Defendants do not deny that they required drivers to perform limousine duties that indisputably would not be considered taxicab exempt. 56.1 ¶¶ 8-9, 12-13.   The driver payment details show that drivers routinely perform LSW and DLC Ground jobs on a weekly basis. 56.1 ¶ 12; Ex. 8.   As the court in *Solis* opined, the logic that as long as at least some portion of DLC Limo's business, DLC Ground, contains taxicab attributes, and is therefore entitled to the taxicab exemption, is "clearly erroneous." *Id*.   As in *Solis*, because it is not disputed that a significant portion of DLC Limo's business is limousine service, Defendants cannot apply the taxicab exemption to its drivers as a result. 56.1 ¶ 16.

### B.    Defendants are Completely Unable to Credibly Distinguish LSW from DLC Ground.

The record also makes apparent that no material distinction exists between its LSW business and its DLC Ground business.  According to both DLC Limo's owner/chief operating office and DLC Limo's General Manager, the only two differences are that the company charges higher fares for its LSW jobs, and that LSW jobs typically use more expensive cars. 56.1 ¶ 17. Confusingly, both Thornton and Gerald Fitzmaurice, General Manager of DLC Limo, also conceded that DLC Limo commonly uses its vehicles interchangeably for its LSW and DLC Ground jobs. 56.1 ¶ 17.  This leads to the completely absurd result that Defendants failed to provide overtime wages to their drivers on the basis that the taxicab exemption applies because DLC Limo itself sets fares higher for its LSW jobs.  Therefore, for the obvious reason that DLC Limo cannot separate its own irrefutable non-exempt limousine service with its claimed "taxicab" service, it cannot ask the Court to do so in order to apply the taxicab exemption to

workers inarguably performing non-exempt limousine work, when the Court must construe the exemption narrowly against the employer.

## **<u>CONCLUSION</u>**

For these reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Partial Summary Judgment on the inapplicability of the taxicab exemption and enter an order striking Defendants' tenth affirmative defense from their Answer.

Dated: New York, New York
      November 1, 2016

Respectfully submitted,

Jeffrey R. Maguire (JM1982)
Alexander T. Coleman (AC1717)
Michael J. Borrelli (MB8533)

21