UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
                                                                             :

ALEJANDRO MUNOZ-GONZALEZ, on behalf of
himself, individually, and on behalf of all others       :   Case No. 15 Civ. 9368 (JPO)
similarly situated,

                                                                                 :

                            Plaintiff,

                                                                               :

      -against-

                                                                                  :

D.L.C. LIMOUSINE SERVICE, INC. and CHRIS
THORNTON, individually, and MELISSA               :
THORNTON, individually, and JOHN D'AGOSTINO,
individually,                                                         :

                            Defendants.                  :

------------------------------------------------------------------- x

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT
## OF THEIR MOTION FOR SUMMARY JUDGMENT

Of Counsel:

      Katherine C. Glynn, Esq.

15859010-v1

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

SUMMARY ........................................................................................................................................1

LEGAL ARGUMENT .........................................................................................................................1

I.      D.L.C. LIMOUSINE, INC. IS THE ONLY NAMED CORPORATE DEFENDANT IN THIS LAWSUIT ..................................................................................1

          A.     The Courts Have Not Eliminated Exemptions to the FLSA ....................................2

          B.     D.L.C. Limousine is Not An Airport Limousine Service and the Plaintiffs Have Failed To Identify the Characteristics of One .................................................3

          C.     Plaintiffs' Bold Assertion that a Customers' Unilateral Decision to Hire D.L.C. Limousine More Than Once Constitutes A Contract Is Unsupported By Law ...............................................................................................4

II.     THERE IS NO QUESTION OF FACT THAT ALL OF D.L.C. LIMOUSINE'S WORK QUALIFIES FOR THE TAXICAB EXEMPTION ................................................5

III.    THE PLAINTIFFS DO NOT DISPUTE THAT CERTAIN PLAINTIFFS' CLAIMS ARE TIME BARRED BY THE STATUTE OF LIMITATIONS .......................9

IV.    THE DEFENDANTS HAVE PROVIDED PLAIN AND ABUNDANT EVIDENCE OF THEIR EFFORT TO DETERMINE WHETHER THEY WERE REQUIRED TO PAY OVERTIME AFTER THE *CARIANI* CASE ..................................9

CONCLUSION ..................................................................................................................................10

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Ancile Inv. Co. v. Archer Daniels Midland Co.*,
    784 F. Supp.2d 296, 305 (S.D.N.Y. 2011) ................................................................................4

*Arena v. Plandome Taxi*,
    2014 WL 1427907 (E.D.N.Y. Apr. 14, 2014) .........................................................................3

*Berrios v. Nicholas Zito Racing Stable, Inc.*,
    849 F. Supp.2d 372, 391 (E.D.N.Y. 2012) ............................................................................10

*Cariani v. D.L.C. Limousine Services, Inc.*,
    363 F. Supp. 2d 637 (S.D.N.Y. 2005) ..........................................................1, 2, 3, 6, 9, 10

*Cherry River Music Co. v. Simitar Entertainment, Inc.*,
    38 F. Supp.2d 310, 319 (S.D.N.Y. 1999) ................................................................................4

*Clarke v. JPMorgan Chase Bank, N.A.*,
    No. 08 Civ. 2400, 2010 WL 1379778, at *12 (S.D.N.Y. Mar. 26, 2010) ..............................10

*June-Il Kim v. Suk Inc.*,
    2014 WL 842646 (S.D.N.Y. Mar. 4, 2014) ............................................................................2

*New Moon Shipping Co. v. MAN B&W Diesel AG*,
    121 F.3d 2, 30 (2d Cir. 1997) ..................................................................................................5

*Palazzo v. Corio*,
    232 F.3d 38, 43-44 (2d Cir. 2000) ...........................................................................................7

*Sea Trade Co. Ltd. v. FleetBoston Fin. Corp.*,
    2008 WL 4129620 (S.D.N.Y. 2008) .......................................................................................7

*U.S. Underwriters Ins. Co. v. 14-33/35 Astoria Blvd.*,
    2014 WL 1653199, (E.D.N.Y. Apr. 23, 2014) .......................................................................7

*Wang v. LW Rest. Inc.*,
    81 F. Supp.3d 241, 259 (E.D.N.Y. 2015) ...............................................................................7

**STATUTES**

29 U.S.C.S. §255(a) ...........................................................................................................................9

29 U.S.C.S §260................................................................................................................................9

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure Rule 56(b)....................................................................................1

**SUMMARY**

Defendants D.L.C. Limousine Service, Inc., Chris Thornton, Melissa Thornton and John D'Agostino, (hereinafter "D.L.C. Limousine") pursuant to Rule 56(b) of the Federal Rules of Civil Procedure ("FRCP") submit this Reply Memorandum of Law in support of their motion for summary judgment.

**LEGAL ARGUMENT**

**I.    D.L.C. LIMOUSINE, INC. IS THE ONLY NAMED CORPORATE DEFENDANT IN THIS LAWSUIT**

The plaintiffs have sued D.L.C. Limousine Service, Inc., a corporate entity that began operations in 1978 that has always done business as LSW and DLC Ground Transportation. (Thornton Aff. ¶3)  D.L.C. Limousine is the "mother company" and "both companies LSW . . . and DLC Ground Transportation roll up into the D.L.C. Limousine Service, Inc., so they are really d/b/a's." (Glynn Aff. Ex. L, Thornton Tr. p. 12)  They are all one company. (Id. at p. 13)  Therefore, the plaintiffs' claim that there is no mention of LSW in <u>Cariani v. D.L.C. Limousine Services, Inc.</u>, 363 F. Supp. 2d 637 (S.D.N.Y. 2005) is irrelevant.  LSW is not a separate entity and not a named defendant in this action.

Since 1981 D.L.C. Limousine's fleet has consisted of taxicabs and sedans, and has primarily consisted of taxicabs. (Thornton Reply Aff. ¶2)  Chris Thornton stated in her affidavit filed in the <u>Cariani</u> case, "D.L.C. operates a fleet of 6 taxicabs, each of which carry up to 5 passengers, including the driver. . . In addition, D.L.C. has 1 town car which also provides transportation services but charges customers a higher rate per trip than taxicabs."  (Thornton Reply Aff. Ex. A ¶11)  Chris Thornton also attached a copy of its taxi fare schedule and a separate Town Car rate schedule.  (Id. at ¶13)  Ms. Thornton also referred to the taxicabs and town cars collectively as "Taxis" and explained to the Court that they were both dispatched,

1

"directly from the Westchester County Airport to airline passengers who arrived at the airport and also are dispatched by telephone when a customer calls to arrange service." (Id. at ¶12) This fact has not changed since then. (Thornton Aff. ¶¶16, 17, 24) They have always had taxicabs and sedans in their fleet, and the sedans have always charged a higher rate. The Cariani Court held the taxicab exemption applied to D.L.C. Limousine, a company that operated with taxicabs and sedans. Defendants seek the same application today.

In addition, the plaintiffs erroneously claim that the Cariani Court did not conduct discovery and therefore did not fully understand how D.L.C. Limousine operated. However, Judge McMahon issued an Order for Additional Discovery on December 20, 2004 that directed the parties to take discovery that would add to the record prior to her making a ruling. (Glynn Aff. Ex. F) She gave the parties until March 4, 2005, or two and a half months to conduct additional discovery after their motion papers had already been filed. (Id.)

  A.  **The Courts Have Not Eliminated Exemptions to the FLSA:**

While the Courts may have held that exemptions should be narrowly construed, they have not ruled that exemptions should be completely eliminated. The taxicab exemption should apply in this case because D.L.C. Limousine has continued to operate as a taxicab company since Judge McMahon held in 2005 that the exemption applied to the company.

Only three cases in New York Federal Courts examined whether the taxicab exemption applied, and only the Court in June-Il Kim v. Suk Inc., 2014 WL 842646 (S.D.N.Y. Mar. 4, 2014) ruled it did not apply. That case specifically distinguished itself and described D.L.C. Limousine as "a taxi and limousine service" that operated in the suburbs, a place where cab drivers rarely cruise for passengers, while the defendant in the Kim case operated in New York City, where everyone hails taxis. Id.

Defendants do not ask that the exemption be liberally applied to them, it simply requests that the Court give the same deference to the definition of "Business of operating taxicabs," which is found in the Department of Labor's Field Operations Book, as the <u>Cariani</u> Court and <u>Arena v. Plandome Taxi</u>, 2014 WL 1427907 (E.D.N.Y. Apr. 14, 2014) Courts instructed.  Based upon those decisions, the only factors that should be considered by this Court are found in the definition as follows:

> 24h 01 "Business of operating taxicabs:"  The taxicab business consists normally of common carrier transportation in small motor vehicles of persons and such property as they may carry with them to any requested destination in the community.  The business operates without fixed routes or contracts for recurrent transportation.  It serves the miscellaneous and predominantly local transportation needs of the community.  It may include such occasional and unscheduled trips to or from transportation terminals as the individual passengers may request, and may include stands at the transportation terminals as well as other places where numerous demands for taxicab transportation may be expected.

The plaintiffs are seeking to steer the Court away from the requirements found in the definition above and in the decisions and precedent of <u>Cariani</u> and <u>Arena</u> in an attempt to defeat summary judgment.  They do so by trying to redirect the focus to areas that are entirely irrelevant and not factors considered by the Courts in deciding whether the taxicab exemption applies.  They erroneously cite: i) D.L.C. Limousine's advertisements; ii) pre-set or calculated gratuities; iii) lack of prearranged schedules and iv) allege Defendants' fares are equivalent to other recognized limousine services, without citing any prices charged by other limousine services.  These irrelevant areas should be disregarded by the Court.

**B.     D.L.C. Limousine is Not An Airport Limousine Service and the Plaintiffs Have Failed To Identify the Characteristics of One**:

D.L.C. Limousine does not concede it is an airport limousine company, as alleged by plaintiffs, because it provides services to any member of the general public who seek transportation services.  (Thornton Aff. ¶15, 24) The plaintiffs assume that it is an airport

3

limousine company because it maintains a taxi stand at the Westchester County Airport. However, maintaining a taxi stand is a factor that qualifies it for the taxicab exemption according to the Department of Labor's definition of "Business of Operating Taxicabs."

The plaintiffs' brief fails to provide a definition of what qualifies as an "airport limousine company." The Department of Labor's Field Operations Handbook (FOH) 2403(a)(4) provides an example of "non-exempt work" as "operation of an airport limousine service (see FOH 24c04)." The plaintiffs' brief fails to consult FOH 24c04 as instructed by the Department of Labor. FOH 24c04 is entitled, "Drivers of buses/shuttle service/limousines operating to and from transportation terminals." Further reading of that definition demonstrates it is referring to the Motor Carrier Act exemption and what type of operations qualify under that exemption. The Defendants are not exerting the Motor Carrier Act and therefore this is not relevant to this case.

> **C.** **Plaintiffs' Bold Assertion that a Customers' Unilateral Decision to Hire D.L.C. Limousine More Than Once Constitutes A Contract Is Unsupported By Law:**

The plaintiffs' brazenly and falsely state without any evidence that D.L.C. Limousine had contracts with "private hangars" and entered into "recurrent contracts" with what they have unilaterally dubbed as "repeat customers". According to the plaintiffs, anyone that hired D.L.C. Limousine more than once to drive them somewhere morphed into a "repeat customer" and automatically had a "recurrent contract" that prohibits the application of the taxicab exemption. This is an absurd argument crafted to avoid summary judgment.

The law is clear that, "as a general rule, a prior course of dealing in and of itself is not a source of future contractual obligation." Ancile Inv. Co. v. Archer Daniels Midland Co., 784 F. Supp.2d 296, 305 (S.D.N.Y. 2011)  See Also Cherry River Music Co. v. Simitar Entertainment, Inc., 38 F. Supp.2d 310, 319 (S.D.N.Y. 1999)("While industry custom and usage or a prior

4

course of dealing between the parties is relevant to determining the meaning of a contract, it cannot create a contract where there has been no agreement between the parties.")

"A course of dealing analysis is not employed to create a contract where one does not exist, rather to explain the terms of the contract where one already exists." New Moon Shipping Co. v. MAN B&W Diesel AG, 121 F.3d 2, 30 (2d Cir. 1997)  See also Restatement 2d of Contracts, §223 (2d 1981)("(1) A course of dealing is a sequence of previous conduct between the parties to an agreement which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct. (2) Unless otherwise agreed, a course of dealing between the parties gives meaning to or supplements or qualifies their agreement.")  Therefore, the plaintiffs' argument that "repeat customers" of D.L.C. Limousine's cars created recurrent contracts fails as a matter of law.  There would not be a single taxicab in the country who could qualify for the exemption under the plaintiffs' logic.

Ms. Thornton testified during her deposition that D.L.C. Limousine did not have contracts with private hangars such as NetJets and Million Air or any airlines.  (Thornton Aff. ¶14, Glynn Aff. Ex. L, Thornton Tr., pp.74-76; Supp. Thornton Aff., ¶3 and Ex. A)

## II. THERE IS NO QUESTION OF FACT THAT ALL OF D.L.C. LIMOUSINE'S WORK QUALIFIES FOR THE TAXICAB EXEMPTION

The plaintiffs argue that D.L.C. Limousine's drivers performed exempt work when they operated taxicabs and non-exempt work when they operated sedans.  Since many of the drivers only operated taxicabs, like Alejandro Munoz-Gonzalez, such individuals would be completely exempt under the plaintiffs' argument. (Thornton Aff. ¶19, 33)  Regardless of that fact, the trips performed in taxicabs and sedans by D.L.C. Limousine's drivers were exactly the same and both merit the taxicab exemption.  The only difference between the sedan and taxicab trips was that the sedan trips charged higher fares and typically used more expensive cars.  (Glynn Aff. Ex. L

Thornton Tr. pp. 53-54; Thornton Aff. ¶14) The plaintiffs concede this point in ¶17 of their Statement of Undisputed Facts which states, "The only differences between DLC Ground services and LSW services are that DLC Limo charges higher fares for LSW jobs and typically use more expensive cars for LSW jobs." The Cariani Court acknowledged that D.L.C. Limousine's fleet included a sedan/Town car for which it charged higher rates, and still held the taxicab exemption applied. This Court should do the same.

There is nothing in the Department of Labor's definition of Business of Operating Taxicabs that eliminates the exemption for Defendants' sedans. The company's sedans were also small passenger vehicles and the same size as their taxis and fit the same number of passenger. (Thornton Reply Aff. ¶3) They followed routes identical to the taxis to destinations chosen by passengers and served the needs of the local community. Passengers simply had the option of picking a slightly nicer vehicle at a higher rate when they ordered a car at the airport, from the taxi stand or when they called D.L.C. Limousine directly. Consequently, 29 C.F.R. 786.200 is inapplicable because all the trips performed by the drivers were within the exemption. In addition, the plaintiffs fail to cite a single case that has ever applied 29 C.F.R. 786.200. Most importantly, the Cariani Court never conducted such analysis because there was no reason to believe D.L.C. Limousine's sedan/Town car work was any different than its taxicab work.

The plaintiffs' argument that the portion of Ms. Thornton's affidavit that provides the number of trips performed in taxicabs versus sedans must be discarded by the Court because it contradicts her prior deposition testimony is incorrect. The plaintiffs are referring to the "sham affidavit" doctrine, a rule whose purpose is to avoid a party opposing summary judgment from creating a "sham affidavit." Here Defendants are the movants and are not trying to create issues of material fact to defat a motion for summary judgment, and thus have no incentive to create such an issue. There are two requirements before this "sham affidavit" principle may apply,

6

neither of which are met in the present case.  First, the deposition testimony and the affidavit must be truly contradictory.  U.S. Underwriters Ins. Co. v. 14-33/35 Astoria Blvd., 2014 WL 1653199, (E.D.N.Y. Apr. 23, 2014)(citing to Palazzo v. Corio, 232 F.3d 38, 43-44 (2d Cir. 2000)).  Second, the conflicting affidavit should not be corroborated by other evidence that would counsel in favor of its admissibility.  Id.  Ms. Thornton's affidavit does not contradict her deposition testimony.  Her deposition testimony was:

| | |
|---|---|
| Question: | So is it your understanding that these drivers are exempt because they perform at least some taxicab work? |
| Answer: | The majority, yes, the majority of their work is taxi work. |
| Question: | When you say the majority, what do you mean? |
| Answer: | More, most. |
| Question: | So in percentage –wise, what would you say is taxi work? What is limousine work? |
| Answer: | I would say, well, the majority, more than 50 percent, perhaps 60. 60 percent. (Glynn Aff. Ex. L, Thornton Tr. p.23) |

In Ms. Thornton's affidavit she simply states that she created a chart of the total number of trips performed by D.L.C. Limousine.  (Thornton Aff. ¶23)  There is no contradiction.  Rather the hard data (not Ms. Thornton's testimony) contradicts Ms. Thornton's estimate of the split between taxi cab and sedan work.  Also, her deposition testimony proved to be inaccurate in light of independent new evidence retrieved by D.L.C. Limousine after her deposition.  Sea Trade Co. Ltd. v. FleetBoston Fin. Corp., 2008 WL 4129620 (S.D.N.Y. 2008).  Additionally, the type of evidence at issue is not the type that is contemplated in the reasoning behind the sham affidavit rule because it is evidence that can be verified and does not require a credibility determination. Wang v. LW Rest. Inc., 81 F. Supp.3d 241, 259 (E.D.N.Y. 2015)  As a result, her affidavit and chart are admissible evidence.

The plaintiffs claim that Defendants' system of coding taxi versus sedan trips is "entirely flawed" because a single Driver Trip Ticket was incorrectly labeled a sedan trip when it was clearly a taxi trip.  The plaintiffs are referring to the March 5, 2013 Driver Trip Ticket (Thornton

7

Reply Affidavit Ex. B, DLC10824) that lists Vehicle Type as TAXI, but was incorrectly inputted into the computer by the dispatcher as a LSW trip (sedan trip). Based upon that single mistake, which amounts to 1 Driver Trip Ticket out of 57,020 Trip Tickets for the entire 2013 year (Thornton Aff. Ex. F), the plaintiffs urge the Court to disregard the entire chart found in Exhibit F of Thornton's Affidavit that lists all the trips taken in either a sedan or taxi between 2009 and 2015. Meanwhile, a small margin of error is always expected when humans are inputting data, and there is no evidence that there is any reason to suspect significant errors in all the data inputted by D.L.C. Limousine's employees.

As a result of this single error, Ms. Thornton checked the March 5, 2013 Driver Trip Ticket and found the information was incorrectly inputted by the Plaintiff Tim Geiger. (Thornton Reply Aff. ¶5)  Mr. Geiger worked as a driver for a few months before being promoted to dispatcher. (Thornton Aff. ¶36)  Ms. Thornton reviewed 114 other Trip Tickets from March 2013 and found three mistakes (including the previously referenced one), all made oddly on the same day by Plaintiff Tim Geiger. (Thornton Reply Aff. ¶5, Ex. B)  Those four mistakes were made between 1:57 p.m. and 4:04 p.m. on March 5, 2013. Mr. Geiger incorrectly labeled three taxi trips as sedan/LSW trips. (Id.) Those three Trip Tickets are attached to Thornton Reply Aff., Ex.B

Ms. Thornton then reviewed 105 Trip Tickets from March 5, 2012 (the year before) and found that every single Trip Ticket was inputted correctly. (Reply Thornton Aff. ¶6)  Ms. Thornton then personally reviewed 100 Trip Tickets from March 2014 (one year later) and every single one was inputted correctly. (Id.) Each of the 319 Trip Tickets she reviewed are attached to Thornton Reply Affidavit as Exhibit C.  Three mistakes out of 309 amounts to a margin of error of .94%.  A margin of error is expected in any human task, and such an insignificant one does not justify the elimination of Defendants Exhibit F to the Thornton Affidavit.

8

**III.    THE PLAINTIFFS DO NOT DISPUTE THAT CERTAIN PLAINTIFFS' CLAIMS ARE TIME BARRED BY THE STATUTE OF LIMITATIONS**

The Defendants argued in their Memorandum of Law in Support of their Motion for Summary Judgment that Alejandro Munoz-Gonzalez, Thomas Acheampong, Massimo Novello, Timothy Geiger and John Anderson's claims of failure to pay overtime and minimum wage are time barred if the Court finds that the Defendants' actions were not willful. The statute of limitations for an FLSA claim is only two years, but increases to three years only if the claim arises out of a "willful" violation. 29 U.S.C.S. §255(a)

The plaintiffs do not dispute the periods of employment for these plaintiffs in their Counter-Statement of Undisputed Facts ¶¶31, 45-48. Therefore, if the Court holds that the Defendants acted in good faith and had reasonable grounds for believing the taxicab exemption applied to their drivers, the aforementioned plaintiffs' claims are barred by the statute of limitations.

**IV.    THE DEFENDANTS HAVE PROVIDED PLAIN AND ABUNDANT EVIDENCE OF THEIR EFFORT TO DETERMINE WHETHER THEY WERE REQUIRED TO PAY OVERTIME AFTER THE *CARIANI* CASE**

The Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment provided substantial evidence of the Defendants' efforts to determine whether the taxicab exemption applied to their company and therefore acted in "good faith". 29 U.S.C.S. §260. The plaintiffs have chosen to only acknowledge in their opposition papers the Defendants' retention of attorneys and extensive motion practice in the Cariani case as evidence that they sought to determine whether the taxicab exemption applied to their drivers. They conveniently ignored the additional evidence submitted by the Defendants of post-Cariani efforts. Meanwhile, the Defendants submitted proof of the Marie Caman case, filed against DLC Limousine in 2010 in the Southern District of New York which asserted nearly identical claims as the Cariani case.

9

Ms. Thornton testified that she contacted an attorney while she was CEO regarding the payment practices of the drivers. (Glynn Aff. Ex. L, Thornton Tr. p. 107) The company's belief that the taxicab exemption applied was reinforced in 2010 when Ms. Thornton hired, "the law firm of Cuddy & Fedder, LLP to represent us and they drafted and prepared the December 16, 2010 letter to Ms. Caman's attorneys that explained that we did not violate any laws because the taxicab exemption applied." (Thornton Aff. ¶29, Ex. J) Defendants attorneys' convinced the plaintiff that the taxicab exemption applied and it was voluntarily dismissed in February 2011. (Thornton Aff. p. 29, Ex. K)

After being sued twice in federal court and twice prevailing on the issue of whether the taxicab exemption applied, the Defendants acted in good faith when they believed the taxicab exemption applied. There is no evidence of any substantial changes in the way that D.L.C. Limousine did business between 2011 (when Caman case was voluntarily dismissed) and when the plaintiff Mr. Munoz filed suit in this case in 2015. The company's work still predominantly emanated from the airport and remained local in nature (less than 70 miles).

A determination of the issue of willfulness is appropriate at the summary judgment stage in misclassification cases like the present one. <u>Berrios v. Nicholas Zito Racing Stable, Inc.</u>, 849 F. Supp.2d 372, 391 (E.D.N.Y. 2012)  The district courts have generally left the question of willfulness to the trier of fact except in misclassification cases, as alleged in this case. See e.g. <u>Clarke v. JPMorgan Chase Bank, N.A.</u>, No. 08 Civ. 2400, 2010 WL 1379778, at *12 (S.D.N.Y. Mar. 26, 2010)(finding no willful violation where defendants originally classified plaintiff as ineligible for overtime and held the two year statute of limitations applied and granted defendants' motion for summary judgment).

## CONCLUSION

Defendants' motion for summary judgment should be granted.

Dated: New York, New York
December 16, 2016

                              **ROBINSON & COLE LLP**

                              By:_____
                                Katherine C. Glynn (KG-9541)
                              Attorneys for All Defendants
                              666 Third Avenue, 20th Floor
                              New York, New York 10017
                              (212) 451-2900