UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALEJANDRO MUNOZ-GONZALEZ,
individually and on behalf of all others similarly
situated,

                                        Plaintiff,

                    -v-

D.L.C. LIMOUSINE SERVICE, INC., CHRIS
THORNTON, MELISSA THORNTON, and
JOHN D'AGOSTINO,

                                        Defendants.

15-CV-9368 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff brings this action on behalf of himself and all similarly situated drivers who

worked for Defendants D.L.C. Limousine Service, Inc. ("DLC Limousine"), Chris Thornton,

Melissa Thornton, and John D'Agostino (collectively, "Defendants").  Plaintiff alleges that

Defendants failed to properly compensate him, and other drivers, for their work in accordance

with provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, New York

Labor Law ("NYLL"), Art. 19 § 650 *et seq.*, and the New York Codes, Rules and Regulations

("NYCRR") tit. 12, § 142–1.2.  Currently pending before this Court are cross-motions for

summary judgment that focus on whether DLC Limousine is exempt from the requirements of

the FLSA pursuant to the "taxicab exemption."  (Dkt. No. 52; Dkt. No. 58.)  For the reasons that

follow, Defendants' motion for summary judgment is granted in part and denied in part, and

Plaintiff's motion is denied.

I.      **Background**

The following facts—which are undisputed unless otherwise noted—are taken from the

record before the Court.

Plaintiff and the putative class members are former DLC Limousine employees who allege that they worked in excess of forty hours per week but were not paid overtime wages as required under FLSA and NYLL.  (*See* Dkt. No. 1 ¶¶ 1-3.)

The crux of the disagreement before the Court on the parties' cross-motions for summary judgment is whether DLC Limousine falls within the "taxicab" exemption under the FLSA, which provides that the overtime provisions of the FLSA "shall not apply with respect to— . . . any driver employed by an employer engaged in the business of operating taxicabs."  29 U.S.C. 213(b)(17).  In 2005, the Honorable Colleen McMahon, considering another case against DLC Limousine, held that DLC Limousine qualified as a business operating taxicabs (and was therefore exempt from the overtime provisions of FLSA).  *See Cariani* v. *D.L.C. Limousine Service, Inc.*, 363 F. Supp. 2d 637 (S.D.N.Y. 2005).  Plaintiff now seeks to revisit that holding in light of changes made to the company since that time.[1]

It is undisputed that DLC Limousine's fleet primarily consists of small, non-metered passenger vehicles.  (Dkt. No. 73 ¶¶ 10-11.)  DLC Limousine's drivers are licensed with the Westchester County Taxi and Limousine Commission.  (*Id.* ¶ 18.)  The company's cars make trips that are predominantly local and rarely exceed seventy miles.[2]  (*Id.* ¶ 17.)

---

[1]     Defendants do not argue that Plaintiff is collaterally estopped from arguing against application of the taxicab exemption because of *Cariani*.  *See Taylor v. Sturgell*, 553 U.S. 880, 893 (2008) (discussing the exception to the rule against nonparty preclusion).  Rather, the *Cariani* decision is potentially persuasive, but non-binding, precedent for this Court to consider in resolving the present dispute.  *See Christiania Gen. Ins. Corp. of N.Y. v. Great Am. Ins. Co.*, No. 87 Civ. 8310, 1990 WL 212950, at *1 (S.D.N.Y. Dec. 17, 1990) (citing *United States v. Birney*, 686 F.2d 102, 107 (2d Cir. 1982)).

[2]     Presumably, the parties rely on the seventy-mile benchmark because "[t]he term 'local' [is] defined by the [Interstate Commerce Commission] to encompass a range of 70 miles or less."  *Cariani*, 363 F. Supp. 2d at 646 (S.D.N.Y. 2005).  Plaintiff disputes whether the trips are indeed local in nature and cite a few examples of documented trips that exceeded seventy miles (*see* Dkt. No. 69 ¶ 25); however, these appear to be exceptions rather than the rule and demonstrate only that the trips rarely exceed seventy miles.  (Dkt. No. 61-1 at 65:12-18 (noting

2

DLC Limousine provides transportation services with its fleet of vehicles under the names of DLC Ground Transportation Services ("DLC Ground") and LSW Chauffeured Transportation ("LSW"). (*Id.* ¶ 13.) DLC Ground and LSW differ in that LSW charges higher fares and uses more expensive cars than DLC Ground. (Dkt. No. 69 ¶ 17.)

DLC Limousine operates primarily in Westchester County, and the majority of its customers originate from the Westchester County Airport, where DLC Limousine operates a counter and taxi stand. (Dkt. No. 73 ¶¶ 2, 22.) DLC Limousine contracted with the County of Westchester to provide taxi and limousine service from the Westchester County Airport from 1981 to 2016. (*Id.* ¶¶ 3-5.) While it primarily serves customers originating from the airport, its second largest source of business is generated by members of the general public who call DLC Limousine to arrange transportation within Westchester County. (*Id.* ¶ 22.)

In addition to its work at the Westchester County Airport and with its local residents, a small percentage of DLC Limousine's business is generated from contracts with other corporate entities. One such contract is with Doral Arrowwood, a Westchester hotel, where DLC Limousine operated a counter that primarily offered rides to the Westchester County Airport. (*Id.* ¶ 23.) DLC Limousine terminated this contract because it did not provide enough business—generating, at most, 1.91% of DLC Limousine's overall business in 2013. (*Id.* ¶ 24.) DLC Limousine also contracted with PepsiCo to provide transportation primarily among various offices and airports. (*Id.* ¶ 25.) Between 2013 and 2016, this contract generated between 0.02% and 0.91% of DLE Limousine's overall business. (*Id.* ¶ 26.)

---

that DLC Limousine has taken trips to Connecticut and New Jersey); Dkt. No. 61-2 at 43:11-44:12 (noting that some trips ended in Connecticut, New Jersey, Pennsylvania, and, "very rarely" to Massachusetts).) Even with these few exceptions, there is no genuine dispute that DLC Limousine's trips were *predominantly* local in nature. (*See* Dkt. No. 55-5 ¶ 7; Dkt. No. 63 ¶ 20.)

Primarily as a result of these recurrent contracts, Plaintiff seeks summary judgment that the taxicab exception no longer applies to DLC Limousine.  (Dkt. No. 58.)  DLC Limousine seeks summary judgment on the same issue, as well as on whether certain of Plaintiff's claims are time barred and whether Plaintiff is entitled to liquidated damages.  (Dkt. No. 52.)

## II.    Legal Standard

It is appropriate for a court to grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party.  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At the summary judgment stage, the court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in its favor."  *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citation omitted).  On summary judgment, any interpretation of an exemption to FLSA should be "narrowly construed against the employers seeking to assert them."  *Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217, 222 (2d Cir. 2002) (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)) (internal quotation mark omitted). Summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party."  *Allen*, 64 F.3d at 79 (quoting *Lunds, Inc. v. Chemical Bank*, 870 F.2d 840, 844 (2d Cir. 1989)) (internal quotation marks omitted).

## III.    Discussion

In 2005, Judge McMahon held that DLC Limousine was in the business of operating taxicabs and was therefore entitled to the taxicab exemption.  *See Cariani*, 363 F. Supp. 2d at

641-45.  Now, Plaintiff argues that, since the decision in *Cariani*, DLC Limousine's business

activities have materially changed such that it is no longer covered by the exemption.  (Dkt. No.

59 at 9-18.)  Plaintiff alternatively argues that Defendants are engaged in the "operation of an

airport limousine service," which the Department of Labor refers to as an "[e]xample[] of non-

exempt work."  (*Id.* at 6-9.)[3]

DLC Limousine also moves for summary judgment on the taxicab exemption, arguing

that any changes to its operations are not sufficient to undermine Judge McMahon's prior

holding that the company is covered by the taxicab exemption.  (Dkt. No. 53 at 12-17.)  In

addition, Defendants argue that certain of the Plaintiff's claims are time-barred (*id.* at 19-20),

and that Plaintiff's claims for liquidated damages must be dismissed because DLC Limousine

acted in good faith (*id.* at 21-22).

### A.    The Field Operations Handbook and Post-2005 Activities

"[E]mployer[s] engaged in the business of operating taxicabs" are exempt from the

FLSA's overtime compensation requirements.  29 U.S.C. 213(b)(17).  While the FLSA does not

define what constitutes "the business of operating taxicabs," numerous courts seeking to

determine whether a defendant's business fell within the exemption have turned to Chapter 24 of

the Department of Labor's Field Operations Handbook ("FOH").  *See, e.g.*, *Arena v. Plandome

Taxi Inc.*, No. 12 Civ. 1078, 2014 WL 1427907, at *15 (E.D.N.Y. Apr. 14, 2014); *June-Il Kim v.

SUK Inc.*, No. 12 Civ. 1557, 2014 WL 842646, at *4 (S.D.N.Y. Mar. 4, 2014); *Cariani*, 363 F.

Supp. 2d at 641; *see also Abel v. S. Shuttle Servs., Inc.*, 301 F. App'x 856, 859 (11th Cir. 2008);

*McKinney v. Med Grp. Transp. LLC*, 988 F. Supp. 2d 993, 1000 (E.D. Wis. 2013); *Rossi v.*

---

[3]    This alternative argument was neither advanced nor discussed in the *Cariani* case.

*Associated Limousine Servs., Inc.*, 438 F. Supp. 2d 1354, 1363 (S.D. Fla. 2006); *Powell v. Carey*

*Int'l, Inc.*, 490 F. Supp. 2d 1202, 1212 (S.D. Fla. 2006).

The 2016 FOH[4] (used by federal courts in interpreting the FLSA's taxicab exemption in

order to achieve a "uniform definition" well-suited to "the purposes of a federal labor law,"

*Cariani*, 363 F. Supp. 2d at 645) defines the "[b]usiness of operating taxicabs" as follows:

> The taxicab business consists normally of common carrier
> transportation in small motor vehicles of persons and such property
> as they may carry with them to any requested destination in the
> community. The business operates without fixed routes or contracts
> for recurrent transportation. It serves the miscellaneous and
> predominantly local transportation needs of the community. It may
> include such occasional and unscheduled trips to or from
> transportation terminals as the individual passengers may request,
> and may include stands at the transportation terminals as well as at
> other places where numerous demands for taxicab transportation
> may be expected.

FOH, Ch. 24(h)(01). Based on this definition, the *Cariani* court concluded that DLC Limousine

is in the business of operating taxicabs. 363 F. Supp. 2d at 645.

Plaintiff contends that this is no longer the case for DLC Limousine, pointing to a number

of changes to the company since 2005 in an effort to create a genuine issue of material fact.

These include (1) DLC Limousine's recurrent contracts with corporate entities and repeat

customers; (2) that DLC Limousine's drivers' schedules are prearranged; (3) that the drivers'

routes are fixed; (4) DLC Limousine's advertisements that style the company as a limousine

business instead of a taxicab business; and (5) DLC Limousine's fares, which are designed to

compete with other limousine companies. (Dkt. No. 59 at 9-19.) Each is discussed in turn.

---

[4]     The 1999 FOH, upon which prior courts relied, contained the same definition.

### 1.      Recurrent Contracts

Plaintiff argues that after the *Cariani* decision, DLC Limousine expanded its operations

to include recurrent contracts with a local hotel, Doral Arrowwood, and a corporate client,

PepsiCo.  (*Id.* at 11.)  But there is no dispute that "[m]ore than ninety-eight percent of D.L.C.

Limousine's business was not under contract between June 2012 and December 2014, and less

than ninety-nine percent since that time."  (Dkt. No. 66 at 6-14; *see* Dkt. No. 73 ¶¶ 23-26.)

Whether a company has recurrent contracts is expressly considered in FOH, Ch.

24(h)(01), which provides for application of the taxicab exemption when a "business operates

without . . . contracts for recurrent transportation."  Where there are significant recurrent

contracts, courts are unlikely to find that a company is covered by the taxicab exemption.

In *Powell*, for example, the court held that the exemption did not apply because, among

other reasons, "Defendants [did] have contract arrangements with local hotels, corporate clients,

and destination management companies."  490 F. Supp. 2d at 1213.  In that case, however, "the

record reflect[ed] neither the exact number of agreements between [Defendant] and local hotels

nor the percentage of [Defendant's] base revenue attributed to these agreements."  *Id.* at 1207.

Here, the record is clear that there are two such contracts, accounting for less than two percent of

DLC Limousine's revenue.

While recurrent contracts may render the taxicab exemption inapplicable in some

situations, the Court concludes that the two recurrent contracts in this case—which made up less

than two percent of the Defendants' business—are insufficient to infect the entire business.[5]

---

[5]       Plaintiff represents that additional contractual relationships existed between DLC
Limousine and its repeat customers, including private hangars such as NetJets and Million Air.
(*See* Dkt. No. 59 at 11; Dkt. No. 71 at 15-16.)  However, Plaintiff provides no evidence of any
written contract with these entities.  (*See* Dkt. No. 59 at 10-11.)  Nor do they provide a legal
basis to support their contention that a prior course of dealing with a customer or corporate entity
could create a contract without a prior agreement between the parties.  *See Cherry River Music*

## 2.        Prearranged Schedules

Plaintiff next argues that, because the drivers' schedules are set by DLC Limousine's General Manager, and not by the drivers themselves, DLC Limousine cannot qualify for the taxicab exemption.  (Dkt. No. 59 at 13-16; Dkt. No. 69 ¶ 5.)

The DOL's FOH, however, includes no mention of "prearranged schedules" in its definition of "[b]usiness of operating taxicabs."  DLC Limousine, therefore, asks this Court to entirely ignore Plaintiff's argument on this point.  (Dkt. No. 66 at 14.)  Yet other courts have discussed this factor as relevant.  Indeed, the *Cariani* court noted the fact that DLC Limousine's "drivers do not organize their own time" as counseling *against* application of the taxicab exemption.  That court nevertheless concluded that DLC Limousine was ultimately entitled to the exemption.  *Cariani*, 363 F. Supp. 2d at 644.

While prearranging the drivers' schedules may tend to cut against application of the taxicab exemption, *see, e.g.*, *Herman v. Brewah Cab, Inc.*, 992 F. Supp. 1054, 1060 (E.D. Wis 1998) (finding that "taxicab companies . . . do not operate on prearranged schedules"); *see also Mascol v. E & L Transp., Inc.*, 387 F. Supp. 2d 87, 97-98 (E.D.N.Y. 2005) (citing *Brewah* for same), the factor is worthy of less weight because it does not appear in the DOL's FOH,  *see Cariani*, 363 F. Supp. 2d at 645; *see also June-Il Kim*, 2014 WL 842646, at *5 (holding that "factors [that] are not specifically mentioned in the Department of Labor's definition of 'business of operating a taxicab' . . . may be of less significance" even though they are still entitled to some weight) (quoting *Powell*, 490 F. Supp. 2d at 1213).  Thus, while this factor cuts against the exemption, it is not dispositive of the issue.

---

*Co. v. Simitar Entm't, Inc.*, 38 F. Supp. 2d 310, 319 (S.D.N.Y. 1999) ("While industry custom and usage or a prior course of dealing between the parties is relevant to determining the meaning of a contract, it 'cannot create a contract where there has been no agreement between the parties.'") (quoting *Stulsaft v. Mercer Tube & Mfg. Co.*, 288 N.Y. 255, 260 (1942)).

3.        **Fixed Routes**

Whether drivers have "fixed routes," however, *is* expressly contemplated by the DOL's

FOH.  Plaintiff relies on the *Abel* case, where the Eleventh Circuit found a "Super Shuttle"

company was not eligible for the taxicab exemption because, among other reasons, "one end of

the route is always fixed" at an airport, 301 F. App'x at 860, to argue that a shuttle company that

uses fixed routes is not exempt from the FLSA.  (Dkt. No. 59 at 14.)  *See also Wirtz v.*

*Cincinnati, Newport & Covington Transp. Co.*, 375 F.2d 513, 514 (6th Cir. 1967) (finding that

the taxicab exemption does not apply where "all trips must either originate or terminate at the

airport" and the defendants' fleet is "used for the sole purpose of providing ground transportation

to and from the airport and their use by the general public is restricted to those traveling to and

from the said airport.")

Here, however, it is undisputed that the second largest group of patrons for DLC

Limousine are members of the general public who contact the company by telephone for rides to

destinations within and near Westchester County.  (Dkt. No. 73 ¶ 22.)  DLC Limousine does not

*solely* provide transportation to or from an airport.  And to the extent that Plaintiff disputes DLC

Limousine's contention that it operated without fixed routes, Plaintiff argues that the drivers

"drove customers from 'Point A to Point B,' which was fixed," and that the routes were "from

one prearranged point to a prearranged destination point."  (Dkt. No. 73 ¶¶ 19, 21.)  Plaintiff

misunderstands this factor, which is focused on whether the routes are "fixed in advance without

reference to the convenience of a particular passenger," and not whether they are prearranged

between the customer and driver.  *Airlines Transp. v. Tobin*, 198 F.2d 249, 252 (4th Cir. 1952).

Thus, this factors favors application of the taxicab exemption to DLC Limousine.

### 4.      Advertisements

Plaintiff argues that DLC Limousine does not fall within the taxicab exemption because it advertises as "Limousine Service Worldwide Chauffeured Transportation" on its website and holds itself out as a provider of "luxury ground transportation."  (Dkt. No. 59 at 17; Dkt. No. 69 ¶ 65.)

How a company advertises is not a factor in the DOL's FOH; however, it has been considered by a number of courts when analyzing whether an employer fits within the taxicab exemption.  *See, e.g.*, *Rossi*, 438 F. Supp. 2d 1363 (noting that "[i]t is undisputed that [defendant] advertises itself as a limousine company"); *Powell*, 483 F. Supp. 2d at 1172 (noting that "Defendants advertised their business as providing 'Limousine Services'").  Indeed, the *Cariani* court listed DLC Limousine's advertising as a factor against application of the taxicab exemption.  363 F. Supp. 2d at 644 (noting that DLC Limousine "does not advertise itself as a taxi company").  Plaintiff argues that, since the court's decision in *Cariani*, DLC Limousine has grown its non-taxi, chauffeured limousine service and "exclusively advertise[d] [its] limousine services."  (Dkt. No. 59 at 18.)

Plaintiff does not dispute that DLC Limousine has two arms: LSW and DLC Ground. (Dkt. No. 73 ¶ 13.)  Plaintiff relies on the website for the LSW arm of the business, which advertises as a limousine service.  (Dkt. No. 59 at 17 n.7.)  DLC Limousine, however, points to its DLC Ground arm, which advertises its work as taxi work.  (*See* Dkt. No. 66 at 19-20.)  Thus, DLC Limousine's advertising is not exclusively limited to advertising its limousine services.

In any event, the Court concludes that, while the company's advertising as a limousine service cuts against application of the taxicab exemption, in view of the FOH, the nature of DLC Limousine's advertising is not determinative.  *See Cariani*, 363 F. Supp. 2d at 645.

10

### 5.    Fares

Finally, Plaintiff points to DLC Limousine's fares, which he contends are competitive with rates charged by other limousine companies, not taxi companies.  (Dkt. No. 59 at 18-19.) This factor, again, is not part of the DOL's FOH definition and is, therefore, entitled to less weight.  In 2005, the *Cariani* court determined that the rates charged by DLC Limousine were "less than the rates charges by recognized limousine services," 363 F. Supp. 2d at 644, but also found the fare comparison to be of "lesser moment" than expected, *id.* 644 n.7.  Indeed, while a number of court since *Cariani* have acknowledged its discussion of the fares—*see June-Il Kim*, 2014 WL 842646, at *4; *Powell*, 490 F. Supp. 2d at 1212; *Rossi*, 438 F. Supp. 2d at 1363; *Arena*, 2014 WL 1427907, at *9—those courts did not themselves rely on fare comparisons.

To the extent that this factor is relevant, charging fares equal to those charged by recognized limousine companies would cut against application of the taxicab exemption. Plaintiff argues that since *Cariani*, "DLC Limo provides limousine services through LSW that are competitive with rates charged by other recognized limousine services."  (Dkt. No. 59 at 18 (citing Dkt. No. 69 ¶ 18).)  However, the deposition testimony on which Plaintiff relies establishes the difference in rates between the company's limousine services and the average taxi competition—not the difference in rates between various limousine services.  (Dkt. No. 61-2 at 28:2-25 (discussing the "limo prices" in comparison to "the average competition of taxi drivers of taxi services in the area").)  Even assuming that DLC Limousine raised its fares after *Cariani* to compete with limousine services, however, the Court does not conclude that this factor is sufficient to outweigh those factors articulated in the DOL's FOH, which collectively point toward application of the taxicab exemption to DLC Limousine.

Certain factors counsel against a determination that DLC Limousine still fits within the taxicab exemption—*i.e.*, their drivers have prearranged schedules, they do not exclusively

11

advertise themselves as a taxicab company, and their fares may be higher than other taxicab companies.  But these factors are not found in the FOH.  Those factors found in the FOH counsel toward application of the taxicab exemption in this case:  DLC Limousine operates without fixed routes, has less than two percent of its business from recurrent contracts, and serves the local needs of the community.  On this undisputed factual record, DLC Limousine remains covered by the FOH's definition of a "[b]usiness of operating taxicabs."

### B.    Operation of a Limousine Service

Having concluded that DLC Limousine is in the business of operating taxicabs under the DOL's FOH definition, the Court turns to whether DLC falls under the FOH's stated exceptions to that definition, such that it is nevertheless required to comply with the FLSA's overtime requirements.  The FOH provides a number of "[e]xamples of non-exempt work."  FOH, Ch. 24(h)(03).  In relevant part, these include "[p]erforming work, including driving, in connection with other business operations of the employer (*i.e.*, not his taxicab operations), such as *operation of an airport limousine service* (*see* FOH 24c04), a pick-up and delivery service, or a moving and storage service."  *Id.* at Ch. 24(h)(03)(a)(4) (emphasis added).[6]

---

[6]    "FOH 24c04," cross-referenced in FOH, Ch. 24(h)(03)(a)(4), provides:

> Drivers of buses/shuttle services/limousines carrying interstate passengers and their baggage to and from transportation terminals within a single state are not engaged in interstate transportation of passengers and property within the meaning of the Motor Carrier Act, unless the transportation is part of a through-ticketing or other common arrangement between the motor carrier and the air carrier. Therefore, section 13(b)(1) will *not* apply except in the case of a through-ticketing or other common arrangement for continuous passage or interchange between the motor carrier and the air carrier.

> An example would be where there is a through-ticketing arrangement under which passengers purchase a single ticket which is good for both the local bus ride and the prior or subsequent interstate journey by air, rail, or bus.

Plaintiff attempts to argue from these provisions that DLC Limousine cannot be considered a "business operating taxicabs" within the DOL FOH definition.  Certainly, the "non-exempt work" examples in the FOH—especially its reference to the "operation of an airport limousine service"—"clearly indicates that not all limousine services fall within the broad definition of 'business of operating taxicabs.'"  *Rossi*, 438 F. Supp. 2d at 1364.  The Court, therefore, must determine the scope of "operation of an airport limousine service" as used in FOH, Ch. 24(h)(03)(a)(4).

Plaintiff argues that it is "logically impossible" for DLC Limousine to be considered in the business of operating taxicabs when "airport limousine service[s]" are explicitly considered non-exempt work.  (Dkt. No. 59 at 8.)  Yet, as discussed above, DLC Limousine is engaged in the "[b]usiness of operating taxicabs" under FOH, Ch. 24(h)(01).  As discussed above, that provision allows for a company to make "occasional and unscheduled trips to or from transportation terminals" as well as maintain "stands at the transportation terminals."  FOH, Ch. 24(h)(01).  That is precisely what DLC Limousine does.  (Dkt. No. 73 ¶ 2.)

That the majority of DLC Limousine's business is airport work (*see* Dkt. No. 66 at 19) does not make it an "airport limousine service."  As discussed by the court in *Cariani*, DLC Limousine operates in Westchester County, "where the vast majority of households have cars, and local cab companies exist primarily to take commuters to and from" transportation hubs.

_____

FOH, Ch. 24(c)(04).  This provision is of little help in the present analysis.  In particular, it discusses what constitutes interstate transportation under that Act, which it makes clear with an example.  This would be helpful if the Court were seeking to determine whether DLC Limousine is engaged in interstate transportation of passengers and property under the Motor Carrier Act— looking to whether it has through-ticketing or other common arrangements with an air carrier— but is of little use in determining whether DLC Limousine is a "non-exempt" "airport limousine service" under FOH, Ch. 24(h)(03)(a)(4).

363 F. Supp. 2d at 644 n.8.  In such a community, it is not surprising that DLC Limousine primarily serves customers originating from the airport.  This is not to the exclusion of other call-in customers—who make up DLC Limousine's second largest customer base (Dkt. No. 73 ¶ 22)—but rather a reflection of the local community's particular needs.  *See June-Il Kim*, 2014 WL 842646, at *5 (acknowledging the local differences between "a taxi and limousine service in Westchester County" and a company operating in "midtown Manhattan").

Because DLC Limousine falls within the FLSA's taxicab exemption, the Court grants summary judgment to DLC Limousine and dismisses Plaintiff's claim for failure to pay overtime in violation of the FLSA.

The parties agree that the NYLL and NYCRR provide exemptions for taxicab drivers that are substantially similar to FLSA's, and that the Court need not perform a separate analysis under those provisions.  (Dkt. No. 53 at 16-19; Dkt. No. 59 at 7 n.4.)  As such, the Court dismisses Plaintiff's NYLL and NYCRR claims regarding failure to pay overtime wages, as well as Plaintiff's NYLL and NYCRR claims for failure to pay minimum wage, spread of hour pay, and failure to furnish proper wage statements and wage notices.

### C.   FLSA Minimum Wage Claims and the Statute of Limitations

In addition to its claims for failure to pay overtime wages, Plaintiff also alleges that Defendants violated the FLSA by failing to pay its employees minimum wage for each hour worked.  (Dkt. No. 1 ¶¶ 55-61.)  The Court's determination that the taxicab exemption applies to DLC Limousine means that the overtime provisions of 29 U.S.C. § 207 "shall not apply" to DLC Limousine.  *See* 29 U.S.C. 213(b).  However, the minimum wage requirements of 29 U.S.C. § 206 are not exempted.  *See Arena,* 2014 WL 1427907, at *14 (noting that a taxicab driver is "guaranteed the minimum wage under the FLSA . . . but is exempt from the FLSA's overtime provisions").  Here, DLC Limousine moves for summary judgment on certain of Plaintiff's

14

claims under the FLSA's statute of limitations.  Neither Plaintiff nor Defendants distinguish between the overtime claims—which are not viable after application of the taxicab exemption—and the minimum wage claims—which survive—in their arguments regarding application of the statute of limitations.

"The FLSA generally provides for a two-year statute of limitations on actions to enforce its provisions, but allows a three-year limitations period for 'a cause of action arising out of a willful violation.'"  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999) (quoting 29 U.S.C. § 255(a)).  "The burden is on the employee to show willfulness."  *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009).  Proof of willfulness requires a factual showing that the employer either "'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].'"  *Porter v. N.Y. Univ. Sch. of Law*, 392 F.3d 530, 531 (2d Cir. 2004) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).  "Courts in this Circuit have generally left the question of willfulness to the trier of fact."  *Ramirez v. Rifkin*, 568 F. Supp. 2d 262, 268 (E.D.N.Y. 2008) (collecting cases); *see also Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 937 (S.D.N.Y. 2013) ("Although willfulness can sometimes be determined at the summary judgment stage, the standard for proving willfulness is high.").

DLC Limousine asserts that all of the claims brought by Alejandro Munoz-Gonzalez, Thomas Acheampong, Massimo Novello, and Timothy Geiger, and certain of the claims brought by John Anderson, are time-barred because the actions occurred more than two years prior to the filing of this action on December 2, 2015.  (Dkt. No. 53 at 19-20.)  Plaintiff argues that summary judgment is inappropriate on the issue of willfulness and, therefore, on whether the claims are within the statute of limitations.

Because the Court has granted summary judgment that DLC Limousine continues to be covered by the taxicab exemption, DLC Limousine's motion for summary judgment on the issue of timeliness is considered only to the extent that it applies to Plaintiff's claims for failure to pay minimum wage.  Here, neither Plaintiff nor DLC Limousine focuses on whether there is factual dispute as to whether the employer "'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]'" with respect to Plaintiff's *minimum wage* claims.  *Porter*, 392 F.3d at 531.  Their arguments focus instead on whether DLC Limousine took proper steps to ensure that the taxicab exemption continued to apply following the *Cariani* decision.  (*See* Dkt. No. 71 at 22-23 (arguing that there is a "triable issue of fact . . . as to whether Defendants can meet their burden of demonstrating that they acted in good faith in light of the changes implemented following *Cariani*).)  Therefore, the Court denies summary judgment on the question whether certain of Plaintiff's claims alleging violation of minimum wage laws are untimely.

### D.      Good Faith and Liquidated Damages

In its Complaint, Plaintiff asserts that he is entitled to liquidated damages as a result of DLC Limousine's failure to pay minimum wage as required by the FLSA.  (Dkt. No. 1 ¶ 61.)

Employers who violate the minimum wage provisions of the FLSA are liable for any unpaid wages "and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b). Where an employer has acted in good faith, however, the court has discretion to award no liquidated damages.  29 U.S.C. § 260.  For DLC Limousine to prevail on its motion for summary judgment that liquidated damages are not available, it must show that it took "active steps to ascertain the dictates of the FLSA and then act to comply with them."  *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 504 (S.D.N.Y. 2015) (quoting *RSR*, 172 F.3d at 142) (internal quotation mark omitted).  Again, the parties focus on DLC Limousine's failure to pay overtime wages and

not on whether the company acted in good faith with respect to paying its employees minimum wage.  (*See* Dkt. No. 53 at 21-22 (discussing its efforts to ascertain compliance with the *overtime* requirements of FLSA by means of application of the taxicab exemption).)  Accordingly, summary judgment at this stage is inappropriate and is denied as to whether Plaintiff's are entitled to liquidated damages resulting from DLC Limousine's alleged failure to comply with the minimum wage requirements of the FLSA.

## IV.    Conclusion

For the foregoing reasons, DLC Limousine's motion for summary judgment is GRANTED IN PART, as to the application of the taxicab exemption, and DENIED IN PART, as to timeliness and liquidated damages relating to Plaintiff's minimum wage claims under FLSA.

Plaintiff's motion for summary judgment on the inapplicability of the taxicab exemption is DENIED.

The parties are directed to file a status update with the Court proposing trial dates and a schedule for pretrial filings within 21 days of this Opinion and Order.

The Clerk of Court is directed to close the motions at Docket Numbers 52 and 58.

SO ORDERED.

Dated: July 12, 2017
       New York, New York

_____
            J. PAUL OETKEN
        United States District Judge